UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STAR INSURANCE COMPANY,

                              Plaintiff,

    - against -

A&J CONSTRUCTION OF NEW YORK, INC., JIMMY
J. PUTHUMANA, and AMALA J. PUTHUMANA,

                              Defendants.

**OPINION & ORDER**

15-CV-8798 (CS)

---

Appearances:

David C. Dreifuss
Maddalena R. Zefferino
Dreifuss Bonacci & Parker PC
Florham Park, New Jersey
*Counsel for Plaintiff*

J. Garth Foley
Foley & Associates, P.C.
New York, New York
*Counsel for Defendants*

Seibel, J.

    Before the Court is the Motion for Summary Judgment of Plaintiff Star Insurance Company. (Doc. 28.) For the reasons stated below, Plaintiff's motion is GRANTED.

# I. BACKGROUND[1]

## A. Factual Background

### 1. The Construction Contract and the General Agreement of Indemnity

In April 2013, Defendant A&J Construction of New York, Inc. ("A&J") entered into a construction contract with the Dobbs Ferry Union Free School District (the "School District") to renovate a cafeteria (the "Project"). (56.1 Stmt. ¶ 5.)

Plaintiff, as surety, issued payment and performance bonds in the amount of $1,379,000.00, listing A&J as the "Contractor as Principal" and the School District as the "Owner." (*Id.* ¶ 6; Doc. 32 ("Thompson Aff.") Ex. A.)

In July 2012, as a precondition for issuing the bonds, Defendants executed a General Agreement of Indemnity (the "GAI") in favor of Plaintiff. (56.1 Stmt. ¶¶ 7-9; Thompson Aff. Ex. B ("GAI").) The GAI's definition of "Surety" includes "Star Insurance Company," and the signature blocks list A&J as the "Principal/Indemnitor" and Defendants Jimmy J. Puthumana and Amala J. Puthumana as "Individual Indemnitors" (collectively, "Indemnitors" or "Defendants").[2] (GAI at 7-8.) The GAI provides that Defendants, jointly and severally, will "indemnify and save harmless [Plaintiff] from any losses, costs or expenses arising out of any surety bonds executed or procured by [Plaintiff] on behalf of A&J." (56.1 Stmt. ¶ 10.) Specifically, Section II.A of the GAI provides:

> The Indemnitors hereby agree faithfully to perform and discharge, or see to the faithful performance and discharge of each and every obligation imposed on them (or any of them) by each and every Bond Issued by the Surety for the Principal, by each and every contract referenced in such Bonds, and by each and every

---

[1] The facts are undisputed unless otherwise noted, and are taken from Plaintiff's Local Rule 56.1 Statement, (Doc. 33 ("56.1 Stmt.")), and supporting materials, unless otherwise noted.

[2] Defendant Jimmy J. Puthumana is the President and Owner of A&J, (56.1 Stmt. ¶ 39), and Defendant Amala J. Puthumana is his spouse. (Doc. 30 ("Dreifuss Decl.") Ex. C. ("Puthumana Depo.") at 26:15-27:19 (referring to Amala J. Puthumana, named on GAI, as wife).)

provision of this Agreement. Accordingly, the Indemnitors further agree to exonerate, save harmless, indemnify, and keep indemnified the Surety from and against ANY AND ALL LOSS WHATSOEVER, including by [*sic*] not limited to all demands, claims, liabilities, damages, costs, charges, fees, expenses, suits, orders, judgments, adjudications, and any other Losses of whatsoever nature or kind, which the Surety pays or incurs or for which the Surety becomes liable or has reason to believe it is, may be, or may become liable (whether or not the Surety shall have paid out any sums on account of such Losses), for any reason whatsoever . . . .

(GAI at 1.) Section V.A.5 of the GAI provides:

The Indemnitors hereby authorize and empower the Surety, at its option and in its sole discretion with or without notice to the Indemnitors, to . . . [d]etermine whether any item of Loss shall be paid, settled, compromised, resisted, defended, or appealed and whether any effort to recover Losses shall be undertaken, settled, compromised, prosecuted, or appealed . . . and the Surety shall have the right to incur such expenses (and to receive reimbursement therefore from the Indemnitors) in handling a Loss or recovery as it shall deem necessary; and the Surety shall have the foregoing rights regardless of whether the Undersigned may have assumed or offered to assume the defense or prosecution of any item of Loss or recovery.

(*Id.* at 4.) Section II.E.1 of the GAI provides:

In any suit hereunder or in any accounting between the Surety and the Indemnitors, an itemized statement of Losses sworn to by an officer of the Surety shall be prima facie evidence of the fact and extent of the liability hereunder of the Indemnitors to the Surety; and the Indemnitors hereby waive any and all right to assert that the Surety, by its acts or omissions, incurred more Loss than necessary or failed to recover as much as it might have, it being expressly understood that swiftness may be critical than economy in fulfilling the spirit as well as the letter of the Surety's obligations under Bonds it Issues for the Principal.

(*Id.* at 2.)

### 2. Notices of Default and Termination of Contract Between A&J and the School District

On August 30 and September 3, 2013, the School District notified A&J that A&J was in default because it failed to achieve substantial completion of the Project. (56.1 Stmt. ¶¶ 16-17; Thompson Aff. Exs. C, D.) On April 11, 2014, the School District notified A&J that it was

3

considering declaring A&J in default and terminating the contract because A&J abandoned its work and left the work in defective condition, failed to pay subcontractors, and failed to remove liens. (56.1 Stmt. ¶ 18; Doc. 31 ("Cashin Aff.") Ex. D at 1-2.) The School District terminated A&J from the Project on July 31, 2014. (56.1 Stmt. ¶ 20; Cashin Aff. Ex. H.)

### 3. Plaintiff's Payments to Subcontractors and Vendors

Beacon Consulting Group ("Beacon") investigated the matter on behalf of Plaintiff. (Cashin Aff. ¶ 4; *id.* Ex. G at 3.) Based upon advice and help from Beacon and Plaintiff's consultant Cashin Spinelli & Ferretti, LLC ("Cashin"), Plaintiff entered into settlement agreements or releases with subcontractors and vendors to satisfy the liens imposed. (Thompson Aff. ¶ 15.) Specifically, Plaintiff settled with the following subcontractors and vendors: (1) Ace Fire and Door for $24,000 (the lien amount was $31,095); (2) Crescent Contracting Corp. for $154,000[3] (the lien amount was $319,092.92); (3) Culinary Depot, Inc. for $135,000 (the lien amount was $233,274.46); (4) NSC Abatement for $8,000 (the lien amount was $9,000); (5) Dutchess Overhead Doors for $16,800 (the lien amount was $10,800);[4] and (6) AGV Electrical Contracting for $50,000. (Cashin Aff. Exs. J-P.) Plaintiff bonded off the lien imposed by Frazier and Sons[5] because Plaintiff's investigation revealed that Plaintiff had defenses to payment of that claim. (56.1 Stmt. ¶ 33; Cashin Aff. Ex. Q.)

### 4. Plaintiff's Settlement and Tender Agreements with the School District

Plaintiff and the School District entered into a settlement agreement and a tender agreement on April 10, 2015. (56.1 Stmt. ¶¶ 22-23; Thompson Aff. Ex. G.) Pursuant to the

---

[3] This settlement amount included the lien amounts owed to IMP Plumbing and Control Logic because they were involved in the Project through Crescent Contracting Corporation. (56.1 Stmt. ¶ 34.)

[4] The settlement with Dutchess Overhead Doors occurred after a judgment was entered against Plaintiff, who was represented by A&J's attorney in that suit. (56.1 Stmt. ¶ 31; Cashin Aff. Ex. J.)

[5] The Court understands "bonding off" to mean that Star substituted a bond as Frasier and Sons' security for its lien and thereby cleared the lien from the property pending the resolution of the dispute.

settlement agreement, Plaintiff paid the School District $51,000 to settle the performance bond claim. (56.1 Stmt. ¶ 24.) The settlement agreement also reserved A&J's right to pursue any claims it had against the School District. (*Id.* ¶ 25.) The tender agreement provided that the School District would contract with Rok-Built Construction, Inc. to complete the work at a cost to the School District of $475,000. (Thompson Aff. Ex. G at Ex. A.)

    B. Procedural Background

Plaintiff commenced this action on November 9, 2015. (Doc. 1.) Plaintiff asserted four causes of action: (1) specific enforcement of the GAI; (2) contractual indemnification pursuant to the GAI; (3) exoneration pursuant to the GAI; and (4) common law indemnification. (Doc. 2 ¶¶ 7-50.) Defendants answered and included a counterclaim on March 31, 2016. (Doc. 7.) The theory of Defendants' counterclaim was that Plaintiff failed to adhere to the GAI by paying claims that Defendants contend should not have been paid. (*Id.* ¶¶ 56-57.) The parties proceeded through discovery,[6] and Plaintiff filed the instant motion on July 13, 2017. (Doc. 28.)

## II. SUMMARY JUDGMENT

    A. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be

---

[6] Defendants did not notice any depositions but they provided documents, and Mr. Puthumana was deposed by Plaintiff. (Dreifuss Decl. ¶ 4.)

5

counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed

for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3).

B. Choice of Law

Because this is a diversity action, the Court must apply the choice of law principles of the forum state – here, New York – to determine which state's substantive law to apply to Plaintiff's claims. *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In this case, neither party addresses the conflict between the GAI, which provides for the application of Ohio law, (GAI at 6), and the fact that the parties' briefs rely almost exclusively on New York law, indicating an assumption that New York law controls. The Court will apply New York law for two reasons.

First, "even when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law." *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991). "'Such conduct indicating the parties' consent to a given state's substantive law can consist of the cases cited and relied upon by the parties in their briefs, and their apparent decision not to raise the choice-of-law issue.'" *Halo Optical Prod., Inc. v. Liberty Sport, Inc.*, No. 14-CV-282, 2017 WL 1082443, at *4 n.1 (N.D.N.Y. Mar. 22, 2017) (quoting *Schneider v. Canal Ins. Co.*, No. 98-CV-5368, 1999 WL 689476, at *8 (E.D.N.Y. Sept. 1, 1999), *aff'd*, 210 F.3d 355 (2d Cir. 2000)); *see Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) ("[T]he parties' briefs assume that New York law controls this issue, and such implied consent . . . is sufficient to establish choice of law.") (second alteration in original) (internal quotation marks omitted). Here, not only do the parties fail to raise the choice-of-law issue, but they rely almost exclusively on New York law.

7

Second, there does not appear to be any substantive difference between the relevant New York law and Ohio law. *Compare Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 257 (Ohio 1987) ("In the absence of specific public policy exceptions, . . . an agreement to indemnify another is generally enforceable."), *and Cincinnati Ins. Co. v. Savarino Constr. Corp.*, No. 08-CV-1061, 2011 WL 1068022, at *4, *8 (S.D. Ohio Mar. 21, 2011) (*prima facie* evidence clause contained in indemnity agreement governed and interpreted by Ohio law "shifts the burden of proof to the Defendants to show that any payment by the Plaintiff was not made in good faith"), *with Int'l Fid. Ins. Co. v. Spadafina*, 596 N.Y.S.2d 453, 454 (2d Dep't 1993) ("Courts have upheld the validity of [indemnity agreements] . . . ."), *and Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 784 N.Y.S.2d 698, 700 (3d Dep't 2004) ("New York courts have held that [*prima facie* evidence clauses] mean that the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount, and this rule applies regardless of whether the principal was actually in default or liable under its contract with the obligee."). Accordingly, the Court applies New York law in deciding Plaintiff's motion.

C. Plaintiff's *Prima Facie* Case[7]

Plaintiff, as the moving party, submitted a statement of allegedly undisputed facts pursuant to Local Rule 56.1(a), but Defendants did not respond with a statement of disputed facts pursuant to Local Rule 56.1(b). Plaintiff's facts are therefore "deemed admitted for purposes of the motion." Local Civ. R. 56.1(c); *see* Fed. R. Civ. P. 56(e)(2); *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003); *see also Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000) (*per

---

[7] All of Plaintiff's causes of actions are based upon the same conduct and the same injury, and the parties do not distinguish between the counts in their summary judgment briefs. Thus, the discussion below applies to all of the causes of action. *See Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312, 2017 WL 1194730, at *10 (E.D.N.Y. Mar. 30, 2017) (treating plaintiff's claims for declaratory relief, specific performance, breach of contract, and injunctive relief in surety bond/indemnity agreement context as coterminous), *appeal filed*, No. 17-2997 (2d Cir. Sept. 22, 2017).

8

*curiam*) (affirming grant of summary judgment based on plaintiff's failure to deny defendants' statement of fact pursuant to Rule 56.1).[8]

Plaintiff's request for summary judgment is based on three arguments. First, the GAI is an enforceable contract. (Doc. 29 ("P's Mem.") at 1.) Second, pursuant to the GAI, Plaintiff settled all claims in connection with the bonds. (*Id.*) Third, there is no evidence that the payments or settlements Plaintiff made were in bad faith or were unreasonable, thus defeating Defendants' only possible defense. (*Id.*) The Court agrees with all three arguments and will grant Plaintiff's summary judgment motion as to liability for the reasons that follow.

"Where, as here, the general contractor has expressly agreed to indemnify the surety for losses arising from claims made on surety bonds, the indemnity agreement governs the relationship between the surety and the contractor." *Gen. Acc. Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.*, 975 F. Supp. 511, 516 (S.D.N.Y. 1997); *see BIB Constr. Co. v. Fireman's Ins. Co. of Newark, N.J.*, 625 N.Y.S.2d 550, 553 (1st Dep't 1995). It is undisputed that Plaintiff and Defendants entered into an indemnity agreement – the GAI. And it is undisputed that the express terms of the GAI obligate Defendants to indemnify and save harmless Plaintiff from any losses, costs or expenses arising out of any surety bonds executed or procured by Plaintiff on behalf of A&J. Additionally, Defendants "authoriz[ed] and empower[ed] [Plaintiff], at its option and in its sole discretion with or without notice to [Defendants], to . . . [d]etermine whether any item of Loss shall be paid, settled, compromised, resisted, defended, or appealed." (GAI at 4.) And, in terms of enforcing the GAI, "an itemized statement of Losses sworn to by an officer of [Plaintiff] shall be prima facie evidence of the fact and extent of the liability hereunder of [Defendants] to [Plaintiff]." (GAI at 2.)

---

[8] The outcome would be the same even if the Court overlooked Defendants' failure to comply with Local Rule 56.1(c) because (as discussed below) the facts they supply via affidavit are irrelevant, unsworn, violative of Rule 26 of the Federal Rules of Civil Procedure, or some combination thereof.

New York courts have consistently held that these kinds of provisions mean that "payments made by sureties under such provisions are scrutinized only for good faith and reasonableness as to the amount paid," and that a plaintiff "state[s] a prima facie case under the contract by submitting proper documentation of payment of [a] settlement . . . as well as the fees and costs incurred in making a settlement." *Spadafina*, 596 N.Y.S.2d at 454-55; *see Renewal Arts*, 784 N.Y.S.2d at 700 (collecting cases).

Here, Plaintiff provides proof of payment of settlements via the Cashin Affidavit, which contains settlement agreements, releases, and copies of checks paid to the subcontractors. Plaintiff having met its burden, the burden shifts to Defendants to show that there is a fact dispute as to bad faith or unreasonableness. *See Merritt-Meridian*, 975 F. Supp. at 518 ("[Plaintiff] is entitled to summary judgment, unless defendants show that there is a genuine issue of fact regarding [Plaintiff's] good faith in settling the claims."); *M.E.S., Inc.*, 2017 WL 1194730, at *14 (once surety makes out *prima facie* case, burden is on defendant to show bad faith to defeat summary judgment).[9]

### D. The Bad Faith or Unreasonable in Amount Defense

"New York courts have equated 'bad faith' with 'fraud or collusion.'" *Travelers Indem. Co. v. Harrison Constr. Grp. Corp.*, No. 06-CV-4011, 2008 WL 4725970, at *5 (E.D.N.Y. Oct. 22, 2008) (quoting *Peerless Ins. Co. v. Talia Constr. Co.*, 708 N.Y.S.2d 223, 224 (4th Dep't 2000)); *see Merritt-Meridian*, 975 F. Supp. at 516 (equating "good faith" with "the absence of an indication of fraud or collusion between [surety] and the claimants"). "Conclusory allegations of bad faith are insufficient to defeat a motion for summary judgment in favor of a surety seeking to

---

[9] Even if the burden were on Plaintiff to show good faith as part of its *prima facie* case, Plaintiff has done so here by describing the process it used, the professional advice on which it relied, and the favorable terms it achieved in settling the claims. (*See* 56.1 Stmt. ¶¶ 21-34; *see also* Cashin Aff. ¶¶ 3-4, 17-21 and Exs. J-R; Thompson Aff. ¶¶ 12, 14-18.)

enforce an indemnification agreement." *Merritt-Meridian*, 975 F. Supp. at 518 (citing *Spadafina*, 596 N.Y.S.2d at 455); *see Renewal Arts*, 784 N.Y.S.2d at 700 ("[D]efendants' conclusory allegations of possible collusion between plaintiff and [obligee] and the excessiveness of the amounts paid on [obligee's] claims are insufficient to meet defendants' burden to raise a question of material fact as to bad faith.").

Defendants' brief is almost entirely comprised of conclusory allegations and citations to cases for boilerplate propositions. (*See* Doc. 40 ("Ds' Mem.").) Still, the Court identifies three arguments, none of which are persuasive.[10]

First, Defendants claim that that the School District's decision to terminate A&J was improper and not justified. (*Id.* ¶ 5.) The record is devoid of any evidence to support this argument, and, in any event, it does not help Defendants meet their burden of showing Plaintiff made the payments (only $51,000 of which went to the School District) in bad faith. *Renewal Arts*, 784 N.Y.S.2d at 700.

Second, Defendants argue that their estimate for the cost of the remaining work on the Project was a fraction of the amount Rok-Built charged to complete the construction. (Ds' Mem. ¶ 6; Doc. 42 ¶¶ 15-16.) This argument is irrelevant. The School District, not Plaintiff, paid Rok-Built to finish the project, and Plaintiff is not attempting to recoup that amount from Defendants. Plaintiff is attempting to recoup what it paid to settle the liens and the performance bond claim. Moreover, even if the argument were not irrelevant, Defendants have supported it only with an unsigned affidavit of Mr. Puthumana, which is inadmissible, *see Shepherd v. Fraisher*, No. 96-CV-3283, 1999 WL 713839, at *6 n.6 (S.D.N.Y. Sept. 14, 1999); *see also* Fed. R. Civ. P. 56(e),

---

[10] Defendants also argue that the GAI is invalid because the signature pages identify the corporation as "A&J Construction of New York, Inc." rather than "A&J Construction of NY, Inc." (Ds' Mem. ¶ 8.) The Court disregards this argument because Defendants at no point moved to amend their answer to include this defense, and it is any event without merit because Mr. Puthumana signed the GAI, personally and as the President of "A&J Construction of New York, Inc." (GAI at 7-8; Puthumana Depo. at 27:2-19.)

11

and an affidavit of an expert who was never identified as such in discovery and whose report was never disclosed prior to this motion, (Doc. 45 ¶ 5).[11]

Third, Defendants argue that Plaintiff's payments to claimants and lien holders were excessive, extravagant, unnecessary, unreasonable and undertaken in bad faith. (Ds' Mem. ¶ 7.) As mentioned earlier, conclusory allegations are insufficient to defeat a motion for summary judgment, *Merritt-Meridian*, 975 F. Supp. at 518 (citing *Spadafina*, 596 N.Y.S.2d at 455), and conclusory allegations are all Defendants have to offer. To the extent Defendants insinuate that Plaintiff acted in bad faith because Defendants were kept in the dark as to Plaintiff's negotiations with claimants and lien holders, Defendants miss the mark. (Ds' Mem. ¶¶ 11-12.) The GAI gives Plaintiff the right to settle claims in its sole discretion without notice to Defendants. (GAI at 4.) Further, as Plaintiff suggests, that Mr. Puthumana knew nothing about how Plaintiff settled the claims[12] and that Defendants took no depositions on the subject show that Defendants' are plucking assertions of bad faith out of thin air. (P's Mem. at 20-22.) Moreover, as Plaintiff argues, not only did Plaintiff settle almost all of the outstanding obligations for less than the lien amounts, Plaintiff's settlement agreement with the School District did not foreclose Defendants'

---

[11] Defendants never disclosed Franz Seborga as an expert witness, (*id.*), and his affidavit and estimates are dated July 6 and 11, 2017, more than four months after the close of discovery (March 1, 2017), (Doc. 41 at 2; *id.* Ex. 2 at 6; *id.* Ex. 3 at 8.) The Court warned Defendants at a premotion conference on March 10, 2017 not to rely on an undisclosed expert witness. Defendants offer no explanation for their failure to disclose Seborga as an expert witness or otherwise explain how their conduct could be regarded as substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). Accordingly, the Court will disregard the affidavit and estimates. *GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 330-32 (N.D.N.Y. 2013) (disregarding affidavit of expert witness because party did not identify witness as expert or fact witness until four months after discovery and party failed to provide substantial justification for late disclosure).

Defendants' violation of Rule 26 (and Local Rule 56.1, *see* page 8 above) is unfortunately not atypical of how their counsel handled this case. (*See* Docs. 8, 15, 21, 24, 27, 37; Minute Entry dated Oct. 6, 2016; Minute Entry dated Oct. 21, 2016.) Defendants' counsel is directed to provide a copy of this Opinion and Order to his clients.

[12] At his deposition, Mr. Puthumana testified that he had no personal knowledge as to a number of matters that would be relevant to proving bad faith or unreasonableness, including whether Plaintiff paid any of A&J's subcontractors or vendors, (56.1 Stmt. ¶ 44), how Plaintiff responded to the performance bond claim, (*id.* ¶ 45), whether A&J provided Plaintiff any input with respect to any of the claims made by A&J's subcontractors and vendors, (*id.* ¶ 47), and how Plaintiff conducted its investigation into the outstanding bond claims, (*id.* ¶ 49).

right to sue the School District for any claims they had against it. Both of these facts tend to show the reasonableness of the settlements. In sum, the Court finds that the record evidence is insufficient to create a fact dispute as to bad faith or unreasonableness.[13]

   E.  Damages

Plaintiff requests summary judgment in the amount of $640,661.19. (P's Mem. at 2, 23.) Plaintiff arrives at this number based on the settlement payout to the School District ($51,000), the combined settlement payouts to the subcontractors and vendors ($387,800), the legal fees to date ($62,562.73), and the consultant fees to date ($77,599.39 to Beacon and $61,699 to Cashin). For support, Plaintiff submitted the Cashin affidavit, which includes documentation supporting the settlement payouts. (Cashin Aff. Exs. K-L.) Plaintiff, however, does not include documentation regarding the legal and consultant fees, and thus the Court cannot assess their reasonableness. The Court therefore will defer the determination of reasonableness of Plaintiff's expenses to the designated magistrate judge. *See M.E.S., Inc.*, 2017 WL 1194730, at *24 ("Courts deciding cases such as these often grant summary judgment on liability and leave issues regarding the reasonableness of expenses for a later evidentiary hearing."); *Merritt-Meridian*, 975 F. Supp. at 520 (granting summary judgment in favor of surety as to liability, and referring matter to magistrate judge to conduct "[a]n inquest to determine [the surety's] reasonable expenses").

---

[13] The Court will also grant Plaintiff's summary judgment motion as to Defendants' counterclaim that Plaintiff failed to adhere to the GAI by paying settlement claims. It is undisputed that Plaintiff had the authority to settle claims and Defendants offer no evidence to support their counterclaim.

13

## III. CONCLUSION

For the reasons stated above, Plaintiff's motion is GRANTED. Judgment will be entered after the reasonableness of the fees is determined. The Clerk of Court is respectfully directed to terminate the pending motion. (Doc. 28.)

**SO ORDERED.**

Dated: December 22, 2017
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.