No objections to this Report and Recommendation (the "R&R") have been received, so I review it for clear error. I find no error, clear or otherwise, and the R&R is therefore adopted as the decision of the Court. The Clerk is respectfully directed to enter judgment in favor of Plaintiff and against Defendants in the amount of $697,160.75.

SO ORDERED.

*Cathy Seibel*

CATHY SEIBEL, U.S.D.J.     11/26/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

STAR INSURANCE COMPANY,

                    Plaintiff,

      -against-

A&J CONSTRUCTION OF NEW YORK, INC.,
JIMMY J. PUTHUMANA, and AMALA J.
PUTHUMANA,

                  Defendants.

-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

15-CV-8798 (CS) (JCM)

To the Honorable Cathy Seibel, United States District Judge:

      Plaintiff Star Insurance Company ("Plaintiff") commenced this action against defendants A&J Construction of New York, Inc. ("A&J"), Jimmy J. Puthumana and Amala J. Puthumana (together, "Defendants"), seeking indemnification for losses it sustained in connection with surety bonds Plaintiff issued on Defendants' behalf. (Docket No. 2). On December 22, 2017, the Court granted Plaintiff's motion for summary judgment as to Defendants' liability and referred the matter to the undersigned to conduct an inquest into the reasonableness of Plaintiff's expenses. (Docket Nos. 46, 47). On March 19, 2018, Plaintiff moved for attorneys' and consultants' fees and costs. (Docket No. 53). Defendants opposed the motion on April 13, 2018, (Docket No. 58), and Plaintiff replied on May 4, 2018. (Docket No. 64).[1] For the reasons below, I respectfully recommend that the Court enter a judgment in favor of Plaintiff and against Defendants in the amount of $697,160.75, representing Plaintiff's losses in the amount of

---

[1] The parties' motion papers are hereinafter referred to as "Pl. Br.," "Def. Opp." and "Pl. Reply," respectively. (Docket Nos. 54, 58, 64). All page number citations to briefs refer to the page number assigned upon electronic filing.

$438,800.00, attorneys' fees and costs in the amount of $131,806.07, and consultants' fees and costs in the amount of $126,554.68.

## I. BACKGROUND

In April 2013, A&J entered into a construction contract with the Dobbs Ferry Union Free School District (the "School District") to renovate a cafeteria (the "Project"). (Summary Judgment Order at 2).[2]  In connection with the Project, Plaintiff, a surety, agreed to issue payment and performance bonds totaling $1,379,000.00. (*Id.*).  Prior to the issuance of the bonds, the parties entered into a General Agreement of Indemnity ("GAI") in favor of Plaintiff.[3]  Under the terms of the GAI, Defendants, jointly and severally, agreed to indemnify Plaintiff for any losses arising out of the surety bonds executed or procured by Plaintiff on A&J's behalf. (*See* GAI § II.A).

A&J failed to complete the Project.  From August 2013 to April 2014, the School District sent A&J numerous notices of default based on A&J's failure to substantially complete the Project and failure to respond to liens filed by A&J's subcontractors and vendors. (Summary Judgment Order at 3-4).  On July 31, 2014, the School District terminated A&J from the Project. (*Id.* at 4).  Plaintiff retained the law firm Dreifuss Bonacci & Parker, PC ("DBP") and consulting groups Beacon Consulting Group ("Beacon") and Cashin Spinelli & Ferretti, LLC ("Cashin") to assist Plaintiff with the investigation and settlement of the performance and payment bond claims. (Summary Judgment Order at 4).  Based on the advice of its attorneys and consultants, Plaintiff satisfied the liens by settling with A&J's various subcontractors and vendors. (*Id.*).  Additionally, Plaintiff and the School District entered into a settlement agreement and a tender

---

[2] Refers to the December 22, 2017 order granting Plaintiff's motion for summary judgment. (Docket No. 47).

[3] The GAI is attached as Exhibit E to the affidavit of David Dreifuss ("Dreifuss Aff."). (Docket No. 55-5).

agreement on April 10, 2015. (*Id.*).  Plaintiff's combined settlement payouts to the subcontractors and vendors totaled $387,800.00. (*Id.* at 13).  Under the agreement with the School District, Plaintiff paid the School District $51,000.00 to settle the performance bond claim. (*Id.* at 5).

Plaintiff commenced this action on November 9, 2015 against Defendants, asserting claims for (1) specific enforcement of the GAI; (2) contractual indemnification pursuant to the GAI; (3) exoneration pursuant to the GAI; and (4) common law indemnification. (Docket No. 2 ¶¶ 7-50).  Defendants answered and asserted a counterclaim against Plaintiff on March 31, 2016, (Docket No. 7), and the parties subsequently completed discovery.  On July 13, 2017, Plaintiff moved for summary judgment, arguing that enforcement of the GAI was required because Plaintiff settled all the bond claims reasonably and in good faith. (Docket Nos. 28, 29).   The Court granted Plaintiff's summary judgment motion as to liability, finding that the settlements negotiated by Plaintiff were reasonable. (Summary Judgment Order at 12-13).  With respect to damages, Plaintiff sought damages based on the $51,000.00 settlement payout to the School District, the combined settlement payouts to the subcontractors and vendors totaling $387,800.00, and the attorneys' and consultants' fees and costs incurred by Plaintiff. (*Id.* at 13). The Court deferred determination of the reasonableness of Plaintiff's expenses to the undersigned. (*Id.*).

## II.  DISCUSSION

### A.  The Settlement Payouts

Plaintiff seeks a judgment that includes its losses based on the $51,000.00 settlement payout to the School District and the combined settlement payouts to the subcontractors and vendors, totaling $387,800.00. (Pl. Br. at 8).  Defendants do not challenge the reasonableness of the settlement payouts.  Consistent with the Summary Judgment Order, which found that

Plaintiff is entitled to its reasonable settlement payments, I recommend awarding the full $438,800.00 in connection with the settlement payouts.

## B.  The GAI Authorizes Plaintiff's Recovery of Attorneys' and Consultants' Fees and Costs

Under New York law, attorneys' and consultants' fees and costs are recoverable if clearly provided for by a contract between the parties. *See Loss Prevention Works, LLC v. March Networks, Inc.*, No. 10 Civ. 7616 (DLC), 2011 WL 5838445, at *3 (S.D.N.Y. Nov. 21, 2011) ("'Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear.'") (citing *NetJets Aviation, Inc. v. LHC Commc'n, LLC*, 537 F.3d 168, 175 (2d Cir. 2008)); *Berkley Regional Ins. Co. v. Weir Bros., Inc.*, No. 13 Civ. 3227 (CM)(FM), 2013 WL 6020785, at *12-13 (S.D.N.Y. Nov. 6, 2013) (plain language of an indemnity agreement authorized plaintiff's recovery of attorneys' fees and consultants' fees in connection with both third-party claims and enforcement of the indemnity agreement against the indemnitor); *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312 (PKC)(VMS), 2018 WL 2766139, at *8-9 (E.D.N.Y. June 8, 2018) (indemnity agreements required the payment of reasonable attorneys' fees in connection with the underlying bond claims and the enforcement of the agreements).

In this case, Defendants agreed to compensate Plaintiff for "[f]ees, expenses, charges and costs of personnel utilized by the Surety in connection with any of the above, whether on salary or retainer or otherwise, including attorneys, investigators, adjustors, accountants, engineers, consultants or any other experts or specialists deemed necessary by the Surety, and any travel, lodging and meal expense attendant thereto." (GAI § II.A.10)  Such fees and costs include those incurred during "[t]he completion or fulfillment by the Surety of any obligations imposed on the Principal by any Bond or bonded contract," (*id.* § II.A.1), "[t]he procurement of or attempt to procure a discharge or release from any Bond or from any liability arising to the Surety

therefrom," (*id.* § II.A.3), and "[e]nforcement of any part of th[e] [GAI] by the Surety against Indemnitors," (*id.* § II.A.6).

Thus, the GAI clearly authorizes Plaintiff's recovery of attorneys' and consultants' fees and costs incurred in connection with Plaintiff's enforcement of the GAI in the instant indemnity suit and those fees and costs incurred in settling the performance bond and lien claims.

## C. Attorneys' Fees and Costs

In its moving papers, Plaintiff represents that it incurred $140,249.66 in attorneys' fees and costs and the invoice appended to Plaintiff's reply brief indicates an additional $16,047.22 incurred preparing the instant motion. (Dreifuss Aff. ¶ 14; McCormick Dec. Ex. D).

## 1. An Hourly Fee Award is Appropriate

DBP billed Plaintiff hourly for work performed on the bond performance and lien claims. (Dreifuss Aff. ¶¶ 10-12). DBP and Plaintiff subsequently switched to a contingency fee arrangement for the litigation of this indemnity action. (*Id.* ¶ 12). Plaintiff asks for an award of attorneys' fees based on either (1) an hourly basis; or (2) $62,562.73, representing legal fees Plaintiff paid in connection with the bond claims, plus 40% of any judgment entered in this matter, reflecting Plaintiff's contingency fee arrangement with DBP. (Pl. Br. at 19). Defendants argue a contingency award is inappropriate because it will overcompensate Plaintiff beyond the hours and labor reasonably spent in this case. (Def. Opp. at 3). Although Plaintiff entered into a contingency fee arrangement with DBP, DBP kept track of the services rendered and the hourly rate applied for said services. (Dreifuss Aff. ¶ 14, Ex. G). The Court recommends awarding attorneys' fees on a reasonable hourly basis, which will fairly compensate Plaintiff for the actual hours DBP worked without resulting in a potential windfall based on the 40% contingency fee agreed to in this case between Plaintiff and DBP.

**2.  Reasonableness of the Attorneys' Fees**

Plaintiff, as the fee applicant, "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates," *Nautilus Neurosciences, Inc. v. Fares*, No. 13 Civ. 1078 (SAS), 2014 WL 1492481, at *1 (S.D.N.Y. Apr. 16, 2014), and must support its motion with "contemporaneous time records that '[specify], for each attorney, the date, the hours expended, and the nature of the work done.'" *Bhungalia Family, LLC v. Agarwal*, 317 F. Supp. 3d 727, 739 (S.D.N.Y. 2018) (quoting *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014)).

The Court "retains discretion to determine . . . what constitutes a reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citation and internal quotation marks omitted).  The Second Circuit has held that "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" *Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  In assessing the reasonableness of attorneys' fees, the Court may generally: "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the reasonable hourly rate by the number of hours reasonably expended to determine the presumptively reasonable fee; and (4) make an appropriate adjustment to arrive at the final fee award." *Creighton v. Dominican Coll.*, No. 09-cv-3983 (TZ), 2011 WL 4914724, at *6 (S.D.N.Y. Aug. 16, 2011).  However, "there is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (citation and internal quotation marks omitted).

**i. Reasonable Hourly Rate**

Plaintiff requests that the Court apply the following hourly rates for the work performed by its attorneys and paralegal:

| Name | Position | Hourly Rate Sought |
|------|----------|--------------------|
| David Dreifuss | Partner | $265.00 |
| JoAnne Bonacci | Partner | $175.00 to $250.00 |
| Paul McCormick | Associate | $170.00 to $175.00 |
| Maddalena Zefferino | Associate | $160.00 |
| Gregory Haroutunian | Associate | $160.00 |
| Gail O'Neill | Paralegal | $85.00 |

(Dreifuss Aff. ¶ 13).  Defendants do not challenge the rates charged by DBP.

A reasonable hourly rate must be in line with the rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation and internal quotation marks omitted); *see also Rosado v. City of N.Y.*, No. 11-cv-4285 (SAS), 2012 WL 955510, at *4 (S.D.N.Y. Mar. 15, 2012) ("The relevant community to which the court should look is the district in which the case was brought.") (citation and internal quotation marks omitted).  "The 'court may determine the reasonable hourly rate by relying both on its own knowledge of comparable rates charged by lawyers in the district' and 'on evidence proffered by the parties.'" *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 338 (S.D.N.Y. 2016) (citation omitted).

Considering the work involved here and the experience and credentials of the attorneys seeking fees, the Court finds that Plaintiff's requested rates are reasonable.  Plaintiff supported its motion with a description of the attorneys and the paralegal working on the matter and included the admission date and experience of the attorneys who worked on the case. (Dreifuss Aff. ¶ 13, Ex. F).  The affidavit submitted by Plaintiff's attorney represents, and the cases

7

confirm, that the rates DBP charged are at or below the rates charged for similar services by lawyers and paralegals in this district with reasonably comparable experience, skill and reputation. (Dreifuss Aff. ¶ 13). *See also Genger v. Genger*, No. 14-cv-05683 (KBF)(DF), 2017 WL 9771814, at *4 (S.D.N.Y. May 22, 2017) (up to $615 per hour for partner, up to $395 per hour for associates, and up to $280 per hour for paralegals were reasonable hourly rates in dispute over indemnity agreement); *HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 720-22 (S.D.N.Y. 2018) ($495 per hour for the case's primary commercial litigator was reasonable; $95 per hour was an appropriate rate for the paralegal); *Clarke v. Hudson Valley Fed. Credit Union*, No. 14-cv-5291 (KBF), 2016 WL 884667, at *5 (S.D.N.Y. Mar. 8, 2016) (approving hourly billing rates of between $250 and $400 for attorneys and $85 for paralegals).  The Court, therefore, considers the rates charged by DBP reasonable.

## ii. Hours Reasonably Expended

Based on the invoices Plaintiff submitted in support of its motion, DBP's attorneys and paralegal worked the following hours in connection with this case:

| Name | Position | Hours |
|------|----------|-------|
| David Dreifuss | Partner | 169.5 |
| JoAnne Bonacci | Partner | 80.3 |
| Paul McCormick | Associate | 60.1 |
| Maddalena Zefferino | Associate | 162 |
| Gregory Haroutunian | Associate | 206.7 |
| Gail O'Neill | Paralegal | 46.9 |

(Dreifuss Aff. Ex. G).[4]

---

[4] In assessing the number of hours expended, the Court recommends excluding the invoice submitted for the first time on reply because Defendants did not have the opportunity to review and challenge the invoice for reasonableness. *See Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D 136, 144 (S.D.N.Y. 2013) (Plaintiff "was obligated, in her initial moving papers, not in her reply, to provide evidence supporting . . . the hours expended by her counsel.").  The Court also recommends excluding the work billed by attorney Eli Rogers on June 10, 2014.  Mr. Rogers worked on the matter for a total of .4 hours, and Plaintiff has not demonstrated that his work should be included in a fee award. (Dreifuss Aff. Ex. G).

"The party seeking attorneys' fees bears the burden of demonstrating that the claimed . . . number of hours [is] reasonable," and the "amount of time expended must be adequately supported by contemporaneous time records that specify relevant dates, time spent, and work done." *Creighton*, 2011 WL 4914724, at *6 (citations and internal quotation marks omitted). "Adjustments must be made to the number of hours expended based on case-specific factors, including deductions for 'excessive, redundant, or otherwise unnecessary hours.'" *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). "In so doing, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (citation and internal quotation marks omitted). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Cesario v. BNI Constr., Inc.*, No. 07 Civ. 8545 (LLS)(GWG), 2008 WL 5210209, at *7 (S.D.N.Y. Dec. 15, 2008) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

Defendants argue that Plaintiff's attorneys should not have expended a significant amount of time on the case given the matter's purported lack of complexity. (Def. Opp. at 3). In response, Plaintiff argues that this case is far from simple as it expended significant expenses investigating and settling numerous performance and payment bond and lien claims. (Pl. Reply at 4-5). In addition, Plaintiff maintains that it incurred substantial legal fees and costs enforcing the GAI against Defendants in this action where Plaintiff's attorneys were compelled to attend numerous initial conferences after Defendants failed to appear, address the counterclaim filed against Plaintiff, litigate discovery disputes, address Defendants' expert discovery, move for

summary judgment and prepare the instant motion for attorneys' and consultants' fees and costs after achieving success on the merits. (*Id.*).

The Court recognizes that Plaintiff seeks attorneys' fees and costs associated with settling the performance bond and lien claims and enforcing the GAI in this indemnity action.  Plaintiff began incurring legal fees in September of 2013 after the School District sent A&J the first notice of default and continued incurring fees through the preparation of this motion. (Dreifuss Aff. Ex. G).  The invoices submitted by DBP detail the discrete tasks conducted by the DBP attorneys and the paralegal working on the case. (*Id.*).  Moreover, the matter was appropriately staffed given the needs of the case.  Although two partners and three associates worked on this case at various times, they performed reasonable and non-duplicative tasks. *See Simmonds v. N.Y.C. Dep't of Corr.*, No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) ("The use of multiple attorneys . . . is not unreasonable *per se*.") (citation and internal quotation marks omitted); *Danaher Corp. v. Travelers Indem. Co.*, No. 10-CV-121 (JPO), 2015 WL 1647435, at *5 (S.D.N.Y. Apr. 14, 2015) (bills from over four different attorneys plus support staff were reasonable in light of the complexity of the case); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (it was not unreasonable for multiple attorneys to participate in "the most critical points in the litigation").  Most invoices submitted include the work of one partner and one associate until the post-pleading stage when Plaintiff entered discovery and engaged in motion practice. While three associates worked on the case during discovery and summary judgment, the Court does not find the staffing of multiple associates unreasonable during this stage of litigation given that associates commonly shoulder the work of discovery and other pretrial tasks under the supervision of partners.

The Court does take issue with several time entries that have been completely redacted without explanation, preventing the Court from reviewing them for reasonableness. The Court also finds that there is an excessive number of entries devoted to conferences with the two separate consulting firms Plaintiff retained in this matter. Rather than deduct hours from the total number of hours expended, the Court will instead apply a modest reduction to the presumptively reasonable fee award, as discussed further below. *See Congregation Rabbinical Coll.*, 188 F. Supp. at 344 ("It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate.").

### iii. Presumptively Reasonable Fee

By multiplying the reasonable hourly rates by the number of hours reasonably expended, the presumptively reasonable attorneys' fee is $135,327.00.

| Name | Position | Reasonable Hourly Rate[5] | Hours Reasonably Expended | Reasonable Fees |
|---|---|---|---|---|
| David Dreifuss | Partner | $265 | 169.5 | $44,917.50 |
| JoAnne Bonacci | Partner | $212.50 | 80.3 | $17,063.75 |
| Paul McCormick | Associate | $172.50 | 60.1 | $10,367.25 |
| Maddalena Zefferino | Associate | $160 | 162 | $25,920.00 |
| Gregory Haroutunian | Associate | $160 | 206.7 | $33,072.00 |
| Gail O'Neill | Paralegal | $85 | 46.9 | $3,986.50 |
| **Total** | | | | $135,327.00 |

---

[5] In instances where an attorney billed at different rates during the litigation, the Court uses a reasonable blended rate for purposes of calculating the presumptively reasonable fee. *See Scholastic, Inc. v. Stouffer*, 246 F. Supp. 2d 355, 357-58 n. 5, 6 (S.D.N.Y. 2003) (applying a blended rate in determining the reasonable hourly rate for individual attorneys where their individual rates changed during the course of litigation).

### iv.  Reasonable Adjusted Award

The Court considers "whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of the plaintiff's success in the litigation." *Robinson v. City of N.Y.*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009).  In awarding fees, "'the most critical factor is the degree of success obtained.'" *Patterson v. Balsamico*, 440 F.3d 104, 123 (2d Cir. 2006) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  In instances where a plaintiff has obtained only partial success, the Court may "'attempt to identify specific hours that should be eliminated, or it may simply reduce the [requested] award to account for the limited success.'" *Creighton*, 2011 WL 4914724, at *8 (quoting *Abrahamson v. Bd. of Educ. of Wappinger Falls Cent. Sch. Dist.*, 374 F.3d 66, 79 (2d Cir. 2004)).  Here, Plaintiff's success should be measured by the settlements it obtained in the bond performance claims as well as the outcome achieved in this action to enforce the GAI against Defendants.

First, as the court already found, "Plaintiff settle[d] almost all of the outstanding obligations for less than the lien amounts [and] Plaintiff's settlement agreement with the School District did not foreclose Defendants' right to sue the School District for any claims they had against it." (Summary Judgment Order at 12-13).  These facts, among others, demonstrated the reasonableness of the settlement payouts obtained in the underlying bond performance and lien claims. (*Id.*).  Second, with respect to this action, Plaintiff prevailed on summary judgment on all four claims asserted against Defendants and the Court dismissed the counterclaim asserted against Plaintiff. (*Id.* at 13).  Plaintiff achieved a complete success on the merits.  Accordingly, given the successful outcomes obtained by Plaintiff, the Court will not reduce the presumptively reasonable fee on this basis.

Nevertheless, a minor reduction to the total attorney fee award is warranted.  First, as Plaintiff suggests, a deduction of $540.00 from the attorney fee award is appropriate because the

Court already awarded Plaintiff $540.00 in attorneys' fees based on Defendants' failure to appear at a pre-motion conference. (Dreifuss Aff. ¶ 3).  Second, as discussed above, there are an excessive number of time entries devoted to internal conferences and conferences with two separate consulting firms. There are also a number of vague billing entries that the Court cannot review for reasonableness.  For example, there are several time entries throughout 2017 and 2018 that have been completely redacted.  In recognition of these factors, the Court recommends reducing the attorney fee award by 5%. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 515 (S.D.N.Y. 2011) (reducing fee award by 7% to account for "some duplicative billing for conferences"); *Hop Hing Produces Inc. v. X & L Supermarket, Inc.*, No. 12-CV-1401 (ARR)(MDG), 2013 WL 1232919, at *7 (E.D.N.Y. Mar. 4, 2013) (reducing fees by 15% for "excessive time spent on conferences"); *Rosso v. Pi Mgmt. Assocs., LLC*, No 02-CV-1702 (KNF), 2006 WL 1227671, at *4 (S.D.N.Y. May 3, 2006) (reducing fee award for vague entries that prevented the court from determining "whether the attorney who performed the work spent his or her time effectively.").

Thus, applying the $540.00 deduction to the presumptively reasonable fee award and then imposing a 5% across-the-board reduction, the Court recommends an attorney fee award of $128,047.65.

**3.  Attorneys' Costs**

Plaintiff also seeks costs incurred by its attorneys in litigation.  Based on the invoices submitted in its moving papers, Plaintiff's attorneys' costs total $4,519.16 as follows:

| Travel | $494.15 |
|---|---|
| Photocopying | $401.60 |
| Mail[6] | $219.54 |
| WestLaw | $1,415.88 |
| Court Fees | $480.00 |

---

[6] This category of expenses includes Federal Express charges and postage.

| | |
|---|---|
| Transcripts | $747.25 |
| DGR Invoices | $278.28 |
| Wolf, Horowitz & Etlinger, LLC Invoices | $482.46 |
| **Total** | $4,519.16 |

(Dreifuss Aff. Ex. G).  Plaintiff can recover "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989).

Plaintiff's attorney costs for travel, photocopying, mail, WestLaw, court fees and transcripts totaling $3,758.42 are reasonable. *See Westport Ins. Corp. v. Hamilton Wharton Grp., Inc.*, 483 Fed. Appx. 599, 605 (2d Cir. 2012) (postage, electronic legal research and photocopying costs were "'the sort of expenses that may ordinarily be recovered' as part of a fee award.") (citation omitted); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 305 (S.D.N.Y. 2001) (reimbursing plaintiff for filing fees and Federal Express costs); *Themis Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *12 (S.D.N.Y. Sept. 4, 2014) (reimbursing plaintiffs for "the cost of online research, making copies, and ordering transcripts"); *Bhungalia*, 317 F. Supp. 3d at 745 ("Costs for shipping, filing fees, process servers, and litigation support are recoverable.").  However, the Court declines to award Plaintiff's attorney costs associated with invoices related to "DGR" and Wolf, Horowitz & Etlinger LLC because Plaintiff does not explain the purpose of the invoices sent to "DGR" or Wolf, Horowitz & Etlinger LLC in its briefs or the motion papers it submitted in support of its motion.

Accordingly, the Court recommends awarding $131,806.07 in total for attorneys' fees and costs, representing $128,047.65 in fees and $3,758.42 in costs.

**D.  Consultants' Fees and Costs**

Plaintiff additionally requests consultants' fees and costs in connection with the work of its consultants, Cashin and Beacon.  According to Plaintiff, Cashin and Beacon assisted Plaintiff with investigating and settling the performance and payment bond claims. (Cashin Dec. ¶ 2). The declaration submitted in support of Plaintiff's motion states that Plaintiff incurred $70,571.83 for the work performed by Cashin and $101,975.67 for the work performed by Beacon. (*Id.* ¶ 12).  However, the contemporaneous time records submitted show that Cashin charged Plaintiff $69,805.33 in total, including $67,248.00 in hourly fees, $141.33 in costs and $2,416.00 in "miscellaneous" charges.[7] (*Id.* Ex. A). A review of Beacon's records shows that Beacon charged Plaintiff $101,103.42 in total, including $100,504.30 in hourly fees and $599.12 in costs.[8] (*Id.* Ex. C).

**1.  Reasonableness of the Consultants' Fees**

The invoices submitted show that Cashin and Beacon charged Plaintiff $67,248.00 and $100,504.30 in hourly fees, respectively. (Cashin Dec. Exs. A, C).  The Court is guided by the methodology used in cases assessing reasonable expert fees.  As with attorneys' fees, the "party seeking reimbursement for expert fees bears the burden of proving reasonableness." *Themis*, 2014 WL 4379100, at *9 (citation and internal quotation marks omitted).  "It follows that, where work is performed on an hourly basis, both the hourly rate and the amount of time expended must be reasonable." *St. Paul Mercury Ins. Co. v. M & T Bank Corp.*, No. 12 Civ. 6322 (JFK),

---

[7] As with the attorneys' fees and costs, the Court does not consider an invoice from Cashin submitted for the first time on reply.  The Court also excludes two charges for $300.00 in the July 2014 invoice because the name of the billing individual and the description of the work conducted have been redacted.

[8] The time records submitted reference a March 2014 invoice in the amount of $866.25. (Cashin Dec. Ex. C at 14). However, because Plaintiff did not include the invoice or an itemized list of fees and expenses for March 2014, the Court will not consider the $866.25 in the total recommended award.

2014 WL 1468452, at *2 (S.D.N.Y. Apr. 11, 2014).  In assessing whether an expert fee is "reasonable," courts in this Circuit consider eight factors:

> (1) the [expert]'s area of expertise, (2) the education and training that is required to provide the expert insight that is sought, (3) the prevailing rates for other comparably respected available experts, (4) the nature, quality and complexity of the discovery responses provided, (5) the cost of living in the particular geographic area, (6) the fee being charged by the expert to the party who retained him, (7) fees traditionally charged by the expert on related matters, and (8) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

*Matteo v. Koh'ls Dep't Stores, Inc.*, No. 09 Civ. 7830 (RJS), 2012 WL 5177491, at *5 (S.D.N.Y. Oct. 19, 2012) (citation omitted).  "In the face of very limited evidence, a court may, in its discretion, simply apply an across-the-board reduction of [the requested] expert's fees." *Id.* (reducing requested expert fees and costs by over 50%); *Vista Outdoor, Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766 (JSR), 2018 WL 3104631, at *12 (S.D.N.Y. May 24, 2018) (reducing requested expert fees and costs by 50% based on the factors outlined in *Matteo*).

Cashin consists of a team of experts in the field of surety bonds and construction. (Cashin Dec. Ex. B).  Beacon describes itself as a "national construction consulting and management firm" with expertise in surety bond claims and construction. (*Id.* Ex. D). Because Plaintiff did not have a claims department, it relied upon the advice of its consultants in negotiating and reaching the agreed-upon settlement payouts. (*Id.* ¶ 2).  However, Plaintiff does not adequately justify its need for two separate consulting firms working on the same matter, especially where Cashin and Beacon have similar expertise in the fields of surety bond claims and construction management. (*Id.* Exs. B, D).  The invoices indicate that consultants from Cashin and Beacon spent substantial time conferring with one another, reviewing each other's work and creating and reviewing status updates.  Plaintiff essentially had two consulting firms negotiating on its behalf where one would have sufficed.

Cashin charged Plaintiff for the work of its consultants at the following hourly rates:

| Name | Position | Hourly Rate |
| --- | --- | --- |
| James Cashin | Principal | $175.00 to $180.00 |
| Wayne Lambert | Regional Manager | $150.00 |
| Louis Baldassarre | Consultant | $135.00 |
| Christopher Cashin | Consultant | $115.00 to $125.00 |

(Cashin Dec. ¶ 6).  Beacon charged Plaintiff for the work of its consultants and professional

support staff at the following hourly rates:

| Name | Position | Hourly Rate |
| --- | --- | --- |
| Dennis O'Neill | President | $160.00 to $165.00 |
| James McInerney | Project Manager/Construction Consultant | $145.00 to $150.00 |
| John Steele | Project Manager/Construction Consultant | $135.00 |
| Karen Anderson | Project Scheduler | $125.00 to $130.00 |
| Marcus Lehner | Project Engineer | $105.00 |
| Al Lin | Project Engineer | $95.00 |
| Carrie Novens | Administrative Professional | $60.00 to $65.00 |
| Jeff Scott | Administrative Professional | $65.00 |

(Cashin Dec. ¶ 7).  Plaintiff submitted evidence through the declaration of James Cashin that the

rates charged by Cashin and Beacon are at or below prevailing rates in the market, and

Defendants do not challenge the proposed rates. (*Id.* ¶ 6).

The invoices submitted by Plaintiff in support of its motion show that Cashin and Beacon

spent upwards of a combined 1,200 hours in connection with the performance bond and lien

claims. (Cashin Dec. Exs. A, C).  Cashin's work began in March 2014, three months before the

School District terminated A&J from the Project, and continued through December 2017. (*Id.*

Ex. A). While Cashin primarily investigated the performance bond claims, Cashin also assisted

DBP with various aspects of this indemnity action against Defendants. (*Id.*).  Beacon began

working on the matter in September 2013, after the first notice of default, and continued billing

Plaintiff through August 2015. (*Id.* Ex. C).

17

The Court recognizes that Cashin and Beacon played a significant role in investigating and ultimately favorably settling the performance bond claims, and that the settlement of the underlying bond claims required close coordination between Plaintiff, its attorneys and its consultants.  According to Plaintiff, Cashin and Beacon were necessary for settling the performance bond and lien claims because Plaintiff did not have its own claims department. (Cashin Dec. ¶ 2).  The Court further notes that the behavior of A&J and its counsel needlessly drove up the consultants' work.

Nonetheless, there are several factors that warrant a reduced award for consulting fees. First, between Cashin and Beacon, Plaintiff had twelve different consulting professionals working on its case even though many of the employees from Cashin and Beacon occupied similar roles. (Cashin Dec. ¶¶ 6-7).  The amount of time expended by Cashin and Beacon in connection with the performance bond claims dwarfs the amount of time expended by DBP, whose work included litigating the bond performance claims as well as the instant indemnity action.  Second, having reviewed the invoices, the Court finds that there are several time entries where consultants performed clerical work, which could instead be performed by administrative professionals at a lower billing rate.  Third, and most significantly, the inefficiencies and duplication of efforts created by enlisting two consulting firms with the same expertise warrant a significant reduction in the fee award.  In recognition of the aforementioned factors, the Court recommends applying a 25% reduction to the total fees sought for Cashin and Beacon.

## 2. Consultants' Costs

The invoices submitted from Cashin show that Cashin charged Plaintiff $141.33 in costs associated with conference calls and, in one instance, a Federal Express shipment to DBP. (Cashin Dec. Ex. A).  Cashin also included "miscellaneous" charges in the amount of $2,416.00 for "distribution of general billing." (*Id.*).  The invoices from Beacon indicate costs totaling

18

$599.12 for travel to and from the Project site, Federal Express and printing. (*Id.* Ex. C).  The

Court declines to award the $2,416.00 in miscellaneous charges sought by Cashin as distribution

costs relating to general billing are better characterized as non-recoverable "overhead" costs. *See*

*Kuzma v. Int'l Revenue Serv.*, 821 F.2d 930, 933 (2d Cir. 1987) ("Identifiable, out-of-pocket

disbursements for items such as photocopying, travel, and telephone costs are . . . distinguished

from nonrecoverable routine office overhead, which must normally be absorbed within the [ ]

hourly rate.").  The remainder of the costs sought are appropriate; thus, the Court recommends an

award of $141.33 in consultants' costs incurred by Cashin and $599.12 for consultants' costs

incurred by Beacon.

Accordingly, for the work performed by Cashin, the Court recommends an award of

$50,577.33, which includes $50,436.00 in fees and $141.33 in costs.  For the work performed by

Beacon, the Court recommends an award of $75,977.35, which includes $75,378.23 in fees and

$599.12 in costs.

## III.  CONCLUSION

For the foregoing reasons, I respectfully recommend that a judgment be entered in favor

of Plaintiff and against Defendants in the amount of $697,160.75, representing Plaintiff's losses

in the amount of $438,800.00, attorneys' fees and costs in the amount of $131,806.07, and

consultants' fees and costs in the amount of $126,554.68.

## IV.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from receipt of this Report and

Recommendation to serve and file written objections. *See* Fed. R. Civ. P. 6(a) and (d) (rules for

computing time).  If copies of this Report and Recommendation are served upon the parties by

mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 6(d), 72(b); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:   November 2, 2018
         White Plains, New York

RESPECTFULLY SUBMITTED:

_____
JUDITH C. McCARTHY
United States Magistrate Judge